UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY

CASE NO. 26-cv-22409-ALTMAN

ARGIROS D.O.O.,
a Croatian limited liability company,

Plaintiff,

v.

MARMER INVESTMENTS LIMITED, *in personam,* and
M/Y KAISER, a 2011 196' Abeking & Rasmussen
Motor Yacht, *in rem*,

Defendants.
_______________________________________/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT, MARMER INVESTMENTS LIMITED'S, MOTION TO DISMISS THE COMPLAINT [DE 9]**

Plaintiff, ARGIROS D.O.O. ("Plaintiff"), by and through undersigned counsel, hereby submits this Response in Opposition to Defendant, MARMER INVESTMENTS LIMITED's ("Defendant," "Marmer" or "Owner"), Motion to Dismiss the Complaint [DE 9] ("Motion"), and states:

## INTRODUCTION

The issue before the Court is Defendant's deliberate decision to bring M/Y KAISER (the "Vessel") into Florida and conduct extensive commercial activity within this District while actively marketing the Vessel for sale. Having availed itself of Florida's maritime marketplace and received actual notice of this action, retained counsel, and appeared before this Court, Defendant now seeks dismissal based on purported defects in service and personal jurisdiction. The law and facts support neither contention. Defendant's Florida activities establish specific jurisdiction, service was

reasonably calculated to provide, and in fact provided, actual notice, and Defendant has suffered no prejudice because of such service. Accordingly, Defendant's Motion should be denied.

## MEMORANDUM OF LAW

A motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) places the burden on the plaintiff to establish a prima facie basis for the exercise of jurisdiction where, as here, the court resolves the motion without an evidentiary hearing. *See Snow v. DirecTV, Inc.,* 450 F.3d 1314, 1317–18 (11th Cir. 2006). In evaluating the motion, a court must accept the plaintiff's uncontroverted allegations as true and construe reasonable inferences in the plaintiff's favor. *Id*. Due process is satisfied where a defendant has sufficient minimum contacts with the forum such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Specific jurisdiction exists where the defendant purposefully directs activities toward the forum and the plaintiff's claims arise out of or relate to those contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–76 (1985).

A motion to dismiss pursuant to Rule 12(b)(5) challenges the sufficiency of service of process under FED. R. CIV. P. 4. Once service is contested, the plaintiff bears the burden of establishing that service was properly affected in accordance with Rule 4. Proof of service must generally be made through the server's affidavit. FED. R. CIV. P. 4(L)(1). Service on a corporation must comply with FED. R. CIV. P. 4(H), which requires delivery of the summons and complaint to an officer, managing agent, general agent, or other agent authorized by appointment or law to receive service. FED. R. CIV. P. 4(H).

## ARGUMENT

**1. The Motion should be Denied because Service of Process was Sufficient.**

**A. Standard of Service.**

FED. R. CIV. P. 4(H) permits service upon a corporation by delivering a copy of the complaint and the summons, by a licensed process server, to an officer, managing or general agent, or any other agent authorized by appointment or law to receive service of process within a judicial district. FED. R. CIV. P. 4(H). The central inquiry is whether the method of service employed was reasonably calculated to provide notice to the defendant and afford an opportunity to be heard. *Mullane v. Central Hanover Bank & Trust Co.* 339 U.S. 306, 314 (1950) (holding that due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."). The court further explained that the notice must be of such nature as reasonably to convey the required information and afford interested parties a reasonable opportunity to appear. *Id*.

The facts here demonstrate that service of process was sufficient. On April 15, 2026, Plaintiff caused a true and correct copy of the Summons and Verified Complaint to be served upon the acting captain of M/Y Kaiser, Marmer Investments Limited's principal asset, while the Vessel was located at Safe Harbor Rybovich, 4200 N. Flagler Drive, West Palm Beach, Florida 33407. [DE 5]. The Return of Service confirms that the licensed process server Charles Goldberg personally served "APAO FONMANU as CAPTAIN for MARMER INVESTMENTS LIMITED" aboard M/Y KAISER while the Vessel was located in this District. [DE 5]. The process server certified under penalty of perjury that he delivered a true and correct copy of the Summons and Verified Complaint to Mr. Fonmanu in his capacity as Captain of the Vessel.

Defendant does not dispute that Mr. Fonmanu was serving as the Vessel's Captain at the time service was effected, nor does it dispute that he actually received the Summons and Complaint aboard the Vessel. Rather, Defendant argues only that Mr. Fonmanu lacked authority to accept service on behalf of Marmer. Thus, the dispute is not whether service was delivered to the Vessel's

Captain, but whether the Captain's position and authority aboard the Vessel rendered service sufficient under Rule 4 and applicable maritime agency principles. For the reasons set forth below, service was sufficient.

Following service, Defendant's English legal counsel retained local Florida legal counsel, who entered an appearance on behalf of Defendant on May 6, 2026. [DE 6]. Defendant thereafter filed an Unopposed Motion for Extension of Time to Respond to the Complaint, which this Court granted. [DE 7; DE 8]. These events confirm that service accomplished precisely what due process requires: Defendant indisputably received actual notice of this action, retained counsel, appeared before the Court, and actively participated in the litigation within days of service. Moreover, Plaintiff consented to Defendant's request for additional time to respond, ensuring that Defendant had time to make their appearance and had a meaningful opportunity to respond. At no point was Defendant deprived of notice or an opportunity to be heard.

Accordingly, under Rule 4, and the standard articulated in *Mullane* ,the service effectuated in this case complied with the rules and fulfilled its essential purpose. Service was reasonably calculated to provide notice and, in fact, provided actual notice. Defendant suffered no prejudice and was afforded a full and fair opportunity to appear and defend this action. For these reasons, Defendant's challenge to sufficiency of service should be denied.

**B. The Captain of Defendant's Vessel had Authority to Accept Service.**

Defendant's challenge to sufficiency of service of process rests on the premise that the Vessel's master lacked authority to act on behalf of the Vessel and its Owner. Maritime law establishes the opposite. Federal maritime law incorporates traditional agency principles, and the existence of an agency relationship is determined by the facts demonstrating authority and function, not by formal employment labels or payroll arrangements. *See Archer v. Trans/American*

*Services, Ltd.*, 834 F.2d 1570 (11th Cir. 1988) (upholding a finding of agency, despite the defendant's claim that it was merely an independent contractor, because it acted on behalf of the vessel). The Eleventh Circuit has further recognized that agency is a question of fact. *Id*. Thus, whether the captain was paid directly by Defendant or through some other arrangement is not dispositive. The relevant inquiry is whether Defendant entrusted the Vessel's captain with authority to act on behalf of it and the Vessel. Here, Defendant did.

Longstanding maritime law recognizes that a vessel's master ordinarily acts as the owner's agent by virtue of the authority entrusted to that position. *Alan, Sean, & Koule, Inc. v. S/V Corsta V*, 286 F. Supp. 2d 1367, 1374 (S.D. Ga. 2003) ("A captain's ability to bind the owners by his statements and acts arises from the captain's status as an agent of the owners, whether it be through actual or apparent authority."). Likewise, the Eleventh Circuit has emphasized the unique role of a vessel's master, quoting Chief Justice Marshall's observation that "[t]he vessel acts and speaks by the Master. She reports herself by the Master." *United States v. Obando,* 891 F.3d 929, 939 (11th Cir. 2018) ("Requiring the master to speak on behalf of the ship also makes sense for practical reasons.").

Authority is determined by function and entrusted responsibility as it expressly presumes that a vessel's master possesses authority to act on behalf of the owner in matters affecting the vessel. *Belcher Oil Co. v. M/V Gardenia,* 766 F.2d 1508, 1510-11 (11th Cir. 1985). This rule exists to protect third parties who reasonably rely upon the authority associated with such positions and eliminates the affirmative obligation to independently investigate the authority. *Marine Coatings of Ala., Inc. v. United States*, 932 F.2d 1370, 1376 (11th Cir. 1991).

Applying these principles, the record demonstrates that Defendant vested the Vessel's captain with both actual and apparent authority to stand as its agent. The captain occupied the

highest operational position aboard the Vessel and was repeatedly entrusted with responsibilities affecting both vessel operations and the Vessel's financial obligations. The Vessel's former captain, Captain Plecas, routinely reviewed, approved, signed, and transmitted salary notifications directing Plaintiff regarding the precise amounts to be paid to individual crew members, and Plaintiff relied upon those instructions to administer payroll for approximately twenty crewmembers over the course of many months. [DE 1-A; DE 1-B]. The former captain also issued and signed a formal written certification representing that all crew salaries had been paid in full. [DE 1-C]. These acts involved communicating the Vessel's and Owner's position regarding wage obligations and making representations upon which third parties, including Plaintiff, were expected to rely. Thus, the captain is treated as an agent, and cannot disavow such positioning when convenient for the Defendant.

The circumstances surrounding the Vessel's extended presence in Florida for at least six months further confirm the authority vested in the captain. For at least six months, M/Y KAISER remained in Florida while being actively marketed for sale and exhibited at multiple boat shows. During that period, the Vessel necessarily required ongoing management, including supervision of the crew, coordination of vessel operations, procurement of necessaries, and interaction with brokers, vendors, and prospective purchasers. There is no indication that these functions were performed by any shoreside representative physically present aboard the Vessel. Rather, Defendant necessarily relied upon the captain to serve as the Vessel's on-board representative. Most significantly, the acting captain was physically aboard the Vessel, serving in that command capacity, when service was effectuated and accepted.

Accordingly, the record demonstrates both actual authority and, at a minimum, apparent authority sufficient to bind the Vessel and Defendant through the actions and representations of the

Vessel's captain. The same facts also demonstrate the reasonableness of service upon the individual serving in that capacity. Having entrusted the captain with command of the Vessel, supervision of the crew, administration of payroll matters, and communications regarding wage obligations, Defendants placed the captain in precisely the position through which legal notice would naturally be transmitted to the Vessel and its Owner. Service upon the acting captain aboard the Vessel was therefore reasonably calculated to provide actual notice. Defendant cannot cloak its captain with broad operational and financial authority when conducting business and then disavow that same authority when called upon to answer in court.

2. **The Motion must be Denied because this Court has Specific Jurisdiction over Defendant.**

**A. Legal Standard**

The Court must engage in a two-part analysis to determine whether it has jurisdiction over the Defendant: (1) whether a basis of jurisdiction is provided under Florida's long-arm statute; and (2) whether there are sufficient minimum contacts to satisfy the due process clause of the Fourteenth Amendment. *Madara v. Hall*, 916 F.2d 1510 (11th Cir. 1990).

For specific jurisdiction, the plaintiff must establish the existence of three elements: (1) the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum; (2) the defendant purposefully availed itself of the privilege of conducting activities within the forum state; and (3) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339 (11th Cir. 2013). The plaintiff bears the burden of establishing the first two prongs. *Id*.

**B. Plaintiff has Established a Prima Facie Basis for Personal Jurisdiction**

At this stage, Plaintiff need only establish a prima facie basis for personal jurisdiction. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339 (11th Cir. 2013). Where, as here, a defendant submits an affidavit contesting jurisdiction, the Court must construe all reasonable inferences in favor of the plaintiff and accept as true the allegations of the *verified* complaint to the extent they are not directly contradicted by competent evidence. *Id.*

Here, Plaintiff has satisfied that burden. The Verified Complaint alleges that Defendant:

> "directly and/or through its agents, including the Vessel's Captain and managers, has operated, conducted, engaged in, or carried on a business or business venture in Florida…In particular, Mamer has operated and maintained the Vessel within the State of Florida for an extended period of time, marketed and offered the Vessel for sale in Florida, and offered the Vessel for charter to customers in Florida. Marmer, through its agents, further directed and/or authorized the provision of necessaires to the Vessel, including operational, management and crew related services, while the Vessel was present in Florida."
>
> [DE 1 at ¶10].

These allegations were verified under oath by Plaintiff, through Zeljan Banovac [DE-1] and therefore constitute competent evidence supporting jurisdiction. *In support of those verified allegations, Plaintiff attaches as Exhibit A a true and correct copy of marketing materials published by Defendant's yacht broker offering M/Y KAISER for sale while the Vessel was located in Florida.* Plaintiff does not submit this exhibit to expand the allegations of the Verified Complaint, but rather as corroborating evidence of jurisdictional facts already alleged under oath and consistent with Defendant's own admission that the Vessel was brought to Florida for the purpose of listing and marketing the Vessel for sale. See [DE 9-1 ¶¶ 27, 29–30].

Notably, the record owner Defendant is Marmer **Investments** Limited, a Cayman Islands company ***whose very name reflects that it is organized as a business enterprise*** for investment purposes. Significantly, Defendant's own evidentiary submission, the declaration of Director

Oleksandr Chornyy, confirms several key jurisdictional facts alleged by Plaintiff, including Marmer's ownership of M/Y KAISER, the Vessel's prolonged presence in Florida, its exhibition at two Florida boat shows, and the procurement of provisioning, maintenance, and dockage services while located in Florida. To the extent the Defendant contends that those activities are legally insufficient to support jurisdiction, such assertions constitute legal conclusions rather than factual contradiction.

Defendant's Director, Oleksandr Chornyy, admits that Marmer owns M/Y KAISER [DE 9-1 ¶3], that the Vessel entered Florida in October 2025 for the purpose of listing the Vessel for sale [DE 9-1 ¶27 and ¶29-30], that the Vessel was displayed at both the Fort Lauderdale International Boat Show and the Palm Beach International Boat Show [DE 9-1 ¶28], and that the Vessel received provisioning, maintenance, and dockage services while located in Florida [DE 9-1 ¶31] . Chornyy further admits that the Vessel remained in Florida from October 2025 through at least the Palm Beach International Boat Show held March 25–29, 2026. The return of service further establishes that the Vessel remained physically present in Florida as of April 15, 2026, thereby confirming that the Vessel had been present in Florida continuously since its October 2025 arrival and for at least six months at the time service was effectuated. See [DE 5]; [DE 9-1 ¶¶ 27–30].

Thus, even accepting Defendant's evidence as true, Defendant intentionally brought its principal asset into Florida, maintained the Vessel in Florida for at least six months, marketed the Vessel through major Florida boat shows, and procured services for the Vessel while it was located within the State. These are not random, fortuitous, or attenuated contacts. Rather, they constitute deliberate and purposeful activities directed toward Florida.

Defendant characterizes the Vessel's Florida presence as a “single visit.” However, Defendant's own declaration establishes that this “single visit" lasted at least six months and was

undertaken for the purpose of marketing and selling the Vessel in Florida. A foreign vessel intentionally brought into Florida, maintained here for **half a year**, marketed through major Florida yacht shows (with a sale price of nearly $40,000,000.00 USD (FORTY MILLION USD), and supported through Florida-based provisioning, maintenance, and dockage services cannot reasonably be characterized as having only fleeting or incidental contacts with the forum. Indeed, even a single purposeful entry into a forum may support specific jurisdiction when the claims arise from or relate to those forum activities. Here, Defendant's contacts were substantially more extensive.

Defendant's declaration is also entitled to limited weight to the extent it merely offers legal conclusions rather than factual testimony. For example, Chornyy asserts that Marmer "did not engage in substantial and not isolated activity within the State of Florida," "did not purposefully seek the protection of Florida law," and could not reasonably anticipate being haled into a Florida court. [DE 9-1 at ¶¶22, 23 and 24]. These statements simply recite the legal standards governing personal jurisdiction and constitute legal conclusions, not factual evidence. The relevant facts admitted by Defendant are that Marmer owned M/Y KAISER, intentionally brought the Vessel to Florida for sale, exhibited the Vessel at the Fort Lauderdale and Palm Beach boat shows, maintained the Vessel in Florida for at least six months, and procured provisioning, maintenance, and dockage services while the Vessel remained in Florida. Plaintiff has established a prima facie case for personal jurisdiction. At this stage, the Court should evaluate the underlying facts, not Defendant's legal characterizations of those facts, and resolve any factual conflicts in Plaintiff's favor.

Accordingly, the sworn allegations of the Verified Complaint, together with Defendant's own admissions regarding the Vessel's prolonged presence and commercial activities in Florida,

establish at least a prima facie basis for personal jurisdiction. Defendant's Motion to Dismiss for lack of personal jurisdiction should therefore be denied.

**C. Florida's Long-Arm Statute Provides a Basis for Jurisdiction.**

Florida's long-arm statute permits exercise of jurisdiction over a defendant who operates, conducts, engages in, or carries on a business or business venture in Florida. *FLA. STAT. § 48.193*.

As explained above, Defendant admits in its declaration that the vessel came to Florida "for the sole purpose of listing the Yacht for sale." [DE 9-1 ¶27]. This is an admission of a commercial objective directed at Florida. Defendant admittedly engaged in substantial business activities in Florida through the Vessel's prolonged presence in the state, including participation in the Fort Lauderdale and Palm Beach International Boat Shows, retention of Florida-based service providers, ongoing efforts to market and sell the Vessel, amongst other activities. Defendant brought the Vessel to Florida specifically to access one of the world's premier yachting marketplaces and to facilitate the sale of the yacht. By exhibiting the Vessel at major boat shows, engaging with brokers, vendors, and prospective purchasers, and maintaining the Vessel in Florida while actively pursuing a sale, Defendant purposefully generated commercial activity and sought substantial economic benefit within the state. Defendant Marmer Investments Limited, a business and not an individual, owned a yacht and intentionally brought that yacht to Florida to sell it, while engaging in provisioning, maintenance, dockage, boat shows, and marketing activities for six months.

Defendant argues that its activities do not constitute carrying on a business venture in Florida, relying primarily on *Bluewater Trading Ltd. Liability Co. v. Fountaine Pajot, S.A.,* 335 F. App'x 905 (11th Cir. 2009), and *Versilia Supply Service SRL v. M/Y Waku,* 371 F. Supp. 3d 1143

(S.D. Fla. 2019). Yet, neither case supports dismissal here, but rather, fully supports denial of Defendant's motion.

In *Bluewater Trading*, the defendant was a foreign yacht manufacturer whose Florida contacts were largely indirect and conducted through an independent dealer and limited to warranty-related activities and a "few" number of payments to Florida entities. *Bluewater Trading Ltd. Liability Co. v. Fountaine Pajot, S.A.,* 335 F. App'x 905 (11th Cir. 2009). Critically, the Eleventh Circuit found personal jurisdiction lacking because the manufacturer did not directly sell vessels in Florida, did not exercise control over the dealer in its sales or warranty service and did not have a contractual relationship with the Florida dealer. *Id.* Here, by direct contrast, Defendant is the owner of the very asset at issue. Defendant intentionally utilized Florida's yacht marketplace as the platform from which to market and sell its principal asset. Defendant's Florida activities were centered on the sale of the Vessel itself. Defendant owned the Vessel, physically maintained it in Florida for months, actively marketed it for sale through major Florida boat shows, repeatedly adjusted the asking price while pursuing a sale, retained yacht sales professionals to facilitate the transaction including Fraser Yachts, whose Fort Lauderdale office marketed and offered the Vessel for sale, contracted with Florida vendors and marina facilities, and sought to consummate the sale of a yacht valued at more than $40 million. Unlike the manufacturer in *Bluewater*, Defendant's conduct was purposefully directed toward selling the Vessel in Florida. Defendant physically brought the Vessel into Florida, maintained it here for at least half a year, exhibited it at major Florida boat shows, and sought to sell it from Florida. Those admitted facts demonstrate purposeful commercial activity directed toward Florida and, at a minimum, distinguish *Bluewater* such that dismissal is inappropriate. Accordingly, *Bluewater* highlights why jurisdiction is appropriate here rather than why it is lacking.

Likewise, *Versilia* maintains denial of the Defendant's motion. In *Versilia,* the court found that the complaint failed to allege sufficient facts demonstrating that the defendant was carrying on a business venture in Florida. *Versilia Supply Service SRL v. M/Y Waku,* 371 F. Supp. 3d 1143 (S.D. Fla. 2019). Yet, the principles discussed in *Versilia* support jurisdiction in the present case. To determine whether a defendant is "carrying on a business" for purposes of Florida's long-arm statute, the court must consider the defendant's activities collectively and determine whether those activities demonstrate a general course of business activity undertaken for pecuniary benefit. *Id*. The court further observed that the purpose of Florida's long-arm statute is "to regard nonresidents who have availed themselves of the privilege of dealing in . . . property . . . within the State in anticipation of economic gain." *Id*. (*quoting Stonepeak Partners, LP v. Tall Tower Capital, LLC,* 231 So. 3d 548, 557 (Fla. 2d DCA 2017)). Moreover, the court recognized that "engaging in a single act for profit can amount to a business venture." *Id. (citing Labbee v. Harrington,* 913 So. 2d 679, 683 (Fla. 3d DCA 2005)).

Applying those principles here, Defendant's conduct readily qualifies as carrying on a business venture in Florida and thus subjects Defendant to personal jurisdiction under Florida's Long-Arm statute. For approximately half a year, Defendant positioned and marketed a $40 million motor yacht in Florida, displayed it at major Florida boat shows, engaged brokers and vendors, maintained marina relationships, and sought to consummate a highly lucrative sale from within the state. Far from supporting dismissal, Defendant's own authorities underscore that these profit-driven activities constitute carrying on a business venture in Florida and therefore satisfy Florida's long-arm statute to achieve personal jurisdiction.

**D. The Claim relates to Defendant's Florida Contacts.**

The first prong of the specific jurisdiction test requires that the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339 (11th Cir. 2013). The Supreme Court has made clear that specific jurisdiction does not require a strict causal connection between a defendant's forum contacts and the plaintiff's claims. Rather, the "arise out of or relate to" requirement is satisfied where the defendant's forum contacts bear a sufficient relationship to the litigation, even absent direct causation. *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1026 (2021); *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1229 (11th Cir. 2023); *Hicks v. Bombardier Recreational Prods.*, 684 F. Supp. 3d 1223, 1238–39 (S.D. Fla. 2023). Thus, the phrase "relate to" contemplates a broader connection than simple causation and permits jurisdiction where there is a substantial relationship between the defendant's forum activities and the subject matter of the dispute. The standard is satisfied here. Plaintiff's claim arises from payments made to satisfy the crew wage obligations incurred in the operation and management of the Vessel.

The claims relate to Defendant's Florida contacts in several respects. The crew payment dispute concerns the yacht's operation and management as these payments to crew are integral to vessel operation. When Defendant brought the Vessel to Florida and continued to operate it here, Defendant was continuing the operational activities that gave rise to the crew payment obligations at issue. Moreover, the payment of crew claims removes liabilities against the Vessel thereby preserving the Vessel's marketability and facilitating its sale free and clear of such claims.

Furthermore, Plaintiff's unjust enrichment claim encompasses Defendant's retention and continued exploitation of the benefit obtained through payment of crew wages. As alleged in the Verified Complaint, the operational history of the Vessel, particularly as it relates to the payments made in satisfaction of the crew's wage claims, supports Defendant's current efforts to market and

sell the Vessel in Florida. Defendant's decision to bring the Vessel to Florida, maintain it through Florida vendors and marinas, exhibit it at major Florida boat shows, and actively market it for sale represents a continuation, exploitation, and monetization of the benefit Defendant obtained through the unreimbursed crew advances. The Vessel is not merely related to the dispute; it is the asset that generated the alleged enrichment and was being commercially exploited in Florida for Defendant's economic gain.

The Vessel's prolonged presence and commercial activities in Florida therefore created a direct and substantial relationship between Defendant's Florida contacts and the subject matter of this litigation. Accordingly, the claim relates to the Defendant's contacts with the forum district.

**E. Defendant Purposefully Availed Itself to Florida's Forum.**

The second prong requires that the defendant purposefully availed itself of the privilege of conducting activities within the forum state. *Louis Vuitton Malletier, S.A. v. Mosseri,* 736 F.3d 1339 (11th Cir. 2013). This prong examines whether the defendant's contacts with the forum were deliberate and voluntary rather than fortuitous or attenuated. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S. Ct. 2174, 2183 (1985).

Defendant's entry into Florida was deliberate and voluntary. Defendant directed the Vessel to Florida specifically to access the state's maritime marketplace and to facilitate a sale. The Vessel's participation in two major boat shows, and subsequent stay in the state afterwards, represents intentional commercial solicitation. Defendant's engagement of Florida-based service reflects deliberate choices to utilize Florida's yachting industry infrastructure. The listing and marketing of the yacht for sale, represented by a Florida sales agent, demonstrates purposeful engagement with the state's yacht industry sales market.

Furthermore, the Vessel being subject to a Foreign Trade Zone bond does not negate personal jurisdiction but rather enhances its application. Unlike the circumstances in *New York Marine Managers, Inc. v. Maitland Bros. Co*., 746 F. Supp. 95 (S.D. Fla. 1990), which Defendant attempts to characterize as analogous, the Vessel's presence in Florida was not limited to a transient passage through the state's waters. Here, by contrast, the Owner didn't merely pass through, but rather intentionally brought the Vessel to Florida for commercial purposes, marketing the vessel while being under a Boat Show Bond, and rather than leaving the state, secondarily availed itself to the privileges of entry into a Foreign Trade Zone in order to continue marketing the vessel in Florida [DE 9]. A foreign-flagged yacht inside a Foreign Trade Zone (FTZ) in Florida can be legally marketed, exhibited, and shown to prospective U.S. buyers. The FTZ designation merely allows yacht brokers to showcase the vessel and conduct sea trials without triggering immediate import duties.

The Defendant took advantage of the legal tools the United States and Florida offered to facilitate their economic activity as directed to Florida. FTZ treatment is simply a customs and tariff mechanism, not a jurisdictional shield, and is truly the tool that allowed Defendant to perform their business in this state. Thus, Defendant purposefully availed itself of the benefits.

These actions are not the result of chance or necessity, but reflect Defendant's calculated decision to exploit Florida's commercial advantages. Defendant cannot claim surprise when haled into Florida court for claims related to the vessel's operation in Florida's waters.

**F. Exercise of Jurisdiction Comports with Fair Play and Substantial Justice.**

Once a plaintiff satisfies the first two prongs by establishing minimum contacts and that the claims relate to those contacts, the defendant bears the burden of making a compelling case

that jurisdiction would offend traditional notions of fair play and substantial justice. *Louis Vuitton Malletier, S.A. v. Mosseri,* 736 F.3d 1339 (11th Cir. 2013).

Defendant voluntarily brought the Vessel to Florida and engaged in substantial commercial activity here, making litigation in Florida entirely foreseeable. Florida has a strong interest in regulating maritime commerce conducted within its borders and ensuring compliance with legal obligations arising from that activity. Florida is also the most efficient forum because the Vessel, relevant witnesses, brokers, marina personnel, service providers, and other evidence are located here. Finally, Plaintiff has a significant interest in obtaining effective relief in the jurisdiction where Defendant's principal asset was served while it was physically present in Florida and security for the in rem claim was posted while the Yacht was physically present in Florida in lieu of arrest.

Further, Defendant should have reasonably anticipated being haled into a Florida court when it deliberately brought the Vessel into Florida, maintained it here for an extended period, utilized Florida marinas and service providers, participated in major commercial boat shows, and actively marketed the Vessel for sale within the state. The Vessel was not merely passing through Florida waters; it physically entered the District, remained here for at least six months, engaged in substantial commercial activity, and availed itself of Florida's yacht industry and maritime infrastructure and marketplace in pursuit of significant economic gain. Defendants' jurisdictional arguments ignore the practical realities of the yacht world and maritime industry and the commercial purpose underlying the Vessel's prolonged presence in Florida. In sum, Defendant is subject to the Court's personal jurisdiction.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied in its entirety. Plaintiff effectuated service in the manner authorized by Rule 4 through service on the captain and

reasonably calculated to provide notice, and Defendants in fact received actual notice, retained counsel, appeared before this Court, and have actively litigated this action. Likewise, the exercise of personal jurisdiction is fully consistent with Florida's long-arm statute and constitutional due process requirements. Defendant, deliberately brought the Vessel into Florida, maintained it here for at least six months, utilized Florida's maritime infrastructure, engaged Florida vendors and brokers, participated in major boat shows, and actively marketed the Vessel for sale in pursuit of substantial economic gain. Having purposefully availed itself of the benefits of conducting business in Florida, Defendant cannot now disavow the authority of its Master or deny its connection to this forum when called upon to answer claims arising from the Vessel's operations.

Accordingly, Plaintiff respectfully requests that the Court deny Defendant’s Motion because personal jurisdiction exists and service of process was properly effectuated. However, should the Court disagree with any aspect of Plaintiff's jurisdictional or service arguments, Plaintiff respectfully requests leave to amend prior to any dismissal of its maritime claims. Because any deficiency would be curable, dismissal with prejudice would be inappropriate. Accordingly, Plaintiff requests such other and further relief as the Court deems just and proper.

WHEREFORE, Plaintiff respectfully requests that this Court deny Defendant, Marmer Investments Limited’s Motion to Dismiss, and grant such other and further relief as the Court deems just and proper.

*Signature on following page.*

Dated: June 10, 2026

Respectfully submitted,
Michael T. Moore
Michael@moore-and-co.com
Moore & Company, P.A.
255 Aragon Avenue, 3rd Floor
Coral Gables, FL 33134
Telephone: 786-221-0600
*Counsel for Plaintiff*

**/s/ Dillon Weiss, Esq.**
Michael T. Moore, Esq.
Florida Bar No. 207845
Dillon M. Weiss, Esq.
Florida Bar No. 1075706

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 10, 2026, a true and correct copy of the foregoing was filed with the Court's electronic filing system, CM/ECF, which will send a notice of electronic filing to all counsel or parties of record.

**/s/ Dillon Weiss, Esq.**
Dillon Weiss, Esq.

**SERVICE LIST**

Serena A. Witter, Esq.
switter@robertallenlaw.com
Fla. Bar No. 45216

Michael Karcher
Florida Bar No. 516287
mkarcher@robertallenlaw.com

ROBERT ALLEN LAW
litigation@robertallenlaw.com
The Four Seasons Office Tower
1441 Brickell Avenue, Suite 1400
Miami, Florida 33131
Tel. (305) 372-3300
Fax. (305) 379-7019