UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY

CASE NO. 26-CV-22409-RKA

ARGIROS D.O.O, a Croatian limited liability company,

*Plaintiff*,

v.

MARMER INVESTMENTS LIMITED, *in personam*, and M/Y KAISER, a 2011 196' Abeking & Rasmussen Motor Yacht, *in rem*,

*Defendants*.
_______________________________________/

**DEFENDANT, MARMER INVESTMENTS LIMITED'S**
**REPLY TO RESPONSE TO MOTION TO DISMISS THE COMPLAINT**

Defendant, Marmer Investments Limited, *in personam*, by and through undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(5), respectfully files its Reply to Plaintiff, Argiros D.O.O.'s Response (ECF No. 13) to Defendant's Motion to Dismiss the Complaint (ECF No. 9) and, in support, states as follows:

## INTRODUCTION

In its Motion to Dismiss, Marmer Investments Limited, a Cayman Islands company ("Marmer") submitted the Declaration of its Director, Mr. Oleksandr Chornyy. (ECF No. 9-1, Chornyy Decl.). This Declaration remains unrebutted by Argiros. Mr. Chornyy clearly established the fact that the individual attempted to be served was not an employee of Marmer but, rather, a separate and independent company—JLS Yachts LLC. (*Id.* ¶¶ 9–10). Argiros maintains that service of process on the third-party company was sufficient because it was "reasonable" to serve the captain of the Vessel, and relies on Marmer receiving actual notice of this suit. This is not the

legal standard, as service must be in accordance with applicable Federal rules and Florida statutes.

Regarding the lack of personal jurisdiction over Marmer, this is not a close case. Mr. Chornyy's Declaration sets forth the absence of any meaningful contacts in Florida on which jurisdiction could be based. The Vessel's stay in Florida for a few months does not constitute engaging in a business venture under Florida's long-arm statute. Moreover, Argiros cannot meet any of the elements to establish that exerting specific jurisdiction over Marmer would comport with the Due Process Clause. Argiros' claim for the alleged failure to pay did not accrue in Florida, does not involve any Florida company or resident, and did not arise from any activities in Florida.

Marmer was not properly served in this case and, even if it had been, this Court does not have personal jurisdiction. The Complaint must be dismissed against Marmer, with prejudice.

## MEMORANDUM OF LAW

### I. Argiros Failed to Properly Serve the Marmer in Accordance with Rule 4(h).

Service of process must be made on "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h). Argiros instead mistakenly relies on an undefined "reasonableness" standard.

In its Response, Argiros failed to address its problem that the captain that it attempted to serve was not an employee of the Vessel owner but, rather, a separate company—JLS Yachts LLC. (ECF No. 9-1, Chornyy Decl. ¶¶ 9–10). Moreover, Argiros fails to address or appreciate the clear distinction between a captain's authority to procure necessaries on behalf of the *in rem* Vessel, and the authority to accept service on behalf of the *in personam* Vessel owner. Argiros cites no authority supporting its position that a captain employed by a third party is nevertheless authorized to accept service of process on behalf of the *in personam* Vessel owner. Instead, the cases cited by Argiros merely address agency theory in general or a captain's general authority to procure

necessaries for the boat. Argiros goes even further and argues that a non-employee could meet the requirements of Rule 4(h) based on mere "apparent authority." (ECF No. 13, Resp. at 6). This is an incredible position with no supporting case law.

Argiros makes a questionable reference to the Vessel's *former* captain, who was not involved with the attempted service at issue and has no relevance to the service of process analysis. Equally puzzling is Argiros' argument that "[a]t no point was Defendant deprived of notice or an opportunity to be heard" because Marmer received an extension to respond to the Complaint. (ECF No. 13, Plf's Resp. at 4). While the undersigned certainly appreciates the Court's granting of an extension, such extension is wholly irrelevant to the service of process analysis. If the very filing of a motion to quash service could be used against the defendant as purported evidence of actual notice, then no motion to quash would ever be granted and Rule 4(h) would be rendered a nullity.

Service of process must be in accordance with the applicable Federal rules, which was not accomplished in this case. Argiros is clearly not permitted to simply serve whoever it "reasonably" believed would deliver a message to the defendant that papers were served. The actual defendant must be served and, accordingly, the Complaint against Marmer should be dismissed.

## II. <u>The Court Lacks Personal Jurisdiction Over Marmer</u>.

### A. <u>Marmer Did Not Engage in a Business Venture Pursuant to Florida's Long-Arm Statute and Argiros' Claim Did Not Arise From Such Activity</u>.

Although similar to the "substantial relationship" element for specific jurisdiction under the Due Process clause (as discussed below), Florida requires a stricter "arising from" correlation:

> Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself. . . to the jurisdiction of the courts of this state for any cause of action ***<u>arising from the doing of any of the following acts. . . .</u>***"

§ 48.193(1)(a), Florida Statutes (emphasis added). This "connexity" requirement stems from

Florida's long-arm statute's mandate that, to support jurisdiction, the cause of action must 'arise from' the enumerated activity." *Skyhop Techs., Inc. v. Narra*, 58 F.4th 1211, 1228 (11th Cir. 2023) (citing *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002) and Fla. Stat. § 48.193(1)(a)).

Argiros attempts to distinguish *Bluewater Trading Ltd. Liab. Co. v. Fountaine Pajot, S.A.*, 335 F. App'x 905 (11th Cir. 2009) on the basis that the foreign defendant in that case acted indirectly through an independent, Florida-based dealer. (ECF No. 13, Plf's Resp. at 12). When addressing whether **general** jurisdiction could be asserted over the defendant, the Eleventh Circuit declined to attribute the dealer's activities in the forum to the foreign manufacturer. *Bluewater*, 335 Fed. Appx. at 907. Aside from the dealer's activities, however, the Eleventh Circuit noted that the foreign manufacturer did make direct contacts with and payments to Florida vendors for services provided in Florida, such as warranty repair work, annual booth at the Miami International Boat Show, and sending a corporate representative to attend that boat show annually. *Id*. at 906. The Eleventh Circuit held that the defendant's contacts with the forum (whether direct or indirect) "did not rise to the level of operating, conducting, engaging in, or carrying on a business or business venture in this state as required by Fla. Stat. § 48.193(1)(a)." *Id*. at 907 (internal quote omitted). Argiros further attempts to distinguish the activities in *Bluewater* as a manufacturer's warranty repairs to the vessel, versus Marmer's activities in this case that "were centered on the sale of the Vessel itself." (ECF No. 13, Plf's Resp. at 12). This distinction is unavailing.

Argiros likewise fails to acknowledge the Southern District's holdings in *Versilia Supply Service SRL v. M/Y Waku, et al.*, 371 F. Supp. 3d 1143 (S.D. Fla. 2019). In *Versilia*, the plaintiff crew members alleged business transactions in Florida that "relate to the maintenance and operation of the Vessel." Argiros acknowledges that the Southern District held that the complaint in that case alleging business transactions that "relate to the maintenance and operation of the

Vessel" were insufficient to demonstrate that defendant was carrying on a business venture in Florida. *Id*. at 1148; (ECF No. 13, Plf's Resp. at 13). It is obvious that the Complaint in this case suffers the same fatal flaw, alleging merely that Marmer "operated and maintained the Vessel," [1] "marketed and offered the Vessel for sale" and "authorized the provision of necessaries to the Vessel, including operational, management, and crew-related services." (ECF No. 1, Compl. ¶ 10).

Plaintiff cites to *Versilia* for the proposition that the defendant's activities must "demonstrate a general course of business activity undertaken for pecuniary benefit. *Id*. at 1149. Marmer takes no issue with this blackletter rule and simply asserts that Argiros has made no such showing. *Versilia*, which Argiros admits should be followed, clearly outlines the factors for determining whether defendant is carrying on a business pursuant to Florida's long-arm statute:

> (1) the presence and operation of an office in Florida; (2) the possession and maintenance of a license to do business in Florida; (3) the number of Florida clients served; and (4) the percentage of overall revenue gleaned from Florida clients.

*Id*. at 1149. In this case, these factors are all answered in the negative.

Furthermore, *Versalia* discusses purposeful availment in the context of a business venture:

> The intent of the long-arm statute is 'to regard nonresidents who have availed themselves of the privilege of dealing in goods, services, or property, whether in a professional or nonprofessional capacity, within the State in anticipation of economic gain, <u>**as operating a business or business venture**</u>.

*Id*. (quoting *Stonepeak Partners, LP v. Tall Tower Capital, LLC*, 231 So. 3d 548, 557 (Fla. 2d DCA 2017) (emphasis added). In its Response, Argiros failed to include the language emphasized above, presumably because it circles back to the business venture factors discussed above. Moreover, the Southern District noted the following: "Notably absent from the Complaint . . . are any allegations that [defendant] operated the Vessel for profit." *Id*. Likewise, Chornyy declares

[1] The Complaint's allegation that the Vessel was offered for charter to customers in Florida is effectively rebutted by Declaration, which stated that the Vessel was used exclusively in the Mediterranean and was never chartered in Florida. (ECF No. 9-1, Chornyy Decl. ¶ 25–26).

that the Vessel was never chartered in Florida. (ECF No. 9-1, Chornyy Decl. ¶ 25–26).

Although Argiros weighs heavily on the fact that Marmer marketed the Vessel for sale in Florida,[2] no sale occurred. The *Stonepeak* case cited by Argiros clarifies that *potential* transactions do not constitute engaging in an actual business venture. *See Stonepeak*, 231 So. 3d at 557 (noting that the defendant "never consummated a transaction to purchase the Clear Channel assets or even entered into a contract for purchase.") Finally, Argiros cites to *Labbee v. Harrington*, 913 So. 2d 679 (Fla. 3d DCA 2005), where the defendant was clearly engaged in a business venture through "multiple acts of renting out his property and eventually selling it for the purpose of realizing a profit." *Id*. at 683. There are no similar facts in this case, where Marmer realized no profit.[3]

Even assuming, *arguendo*, that Marmer were deemed to be operating a business venture in Florida, Argiros still fails to meet the long-arm statute's direct connexity requirement—that Argiros' claim must "**aris[e] from the doing of**" such business activity. § 48.193(1)(a), Florida Statutes. The alleged and disputed debt did not "arise from" any activity occurring in Florida.

**B. Imposing Specific Jurisdiction over Marmer Would Violate Due Process.**

The plaintiff bears the burden of establishing the first two prongs in the specific jurisdiction due process analysis: (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the defendant "purposefully availed" itself of the privilege of conducting activities within the forum state. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013). Only if the plaintiff establishes the first two prongs, then then the defendant must make a "compelling case" that the exercise of jurisdiction would violate

---

[2] The fact that the Vessel was marketed for sale in Florida is undisputed and the 50-page brokerage listing lends nothing to the analysis. (ECF No. 13-1).

[3] Argiros resorting to gleaning jurisdictional significance from the word "Investments" in Marmer's corporate name truly reveals the weakness of its position. (ECF No. 13 at 8).

traditional notions of fair play and substantial justice. *Id*. As established below, none of these elements have been met and the Court cannot exercise personal jurisdiction over Marmer.

**1. No Strong Relationship**

The Eleventh Circuit describes the "essential foundation of specific jurisdiction" is "whether there is a **strong relationship** among the defendant, the forum, and the litigation." *Skyhop Techs., Inc. v. Narra*, 58 F.4th 1211, 1229 (11th Cir. 2023) (internal quotations omitted) (emphasis added). Argiros concedes that there must be a "substantial relationship" between its claims and the defendant's activities in the forum state. (ECF No. 13, Plf's Resp. at 14).

The three cases cited by Argiros do not help its cause but, rather, serve to demonstrate its failure to meet this foundational element. In *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. 351 (2021), the strong relationship existed because plaintiff's claim arose from the Ford vehicles malfunctioning in the forum state. *Id*. at 365. In *Hicks v. Bombardier Rec. Prods.*, 684 F. Supp. 3d 1223 (S.D. Fla. 2023), the strong relationship existed because the plaintiffs alleged that they were Florida residents and their injuries occurred in Florida, which arose from the defendant's sale of a vehicle with a faulty seatbelt that malfunctioned during a rollover incident. *Id*. at 1232, 1237, 1239. In *Skyhop Techs., Inc. v. Narra*, 58 F.4th 1211 (11th Cir. 2023), the strong relationship existed where the plaintiff's claim of a violation of the Computer Fraud and Abuse Act directly arose from receiving the defendant's email in the forum state, threatening to withhold the company's source code and passwords until it received the demanded payment of $1.1 million. *Id*. at 1229. In stark contrast to these cases, there is simply no relationship between Argiros' claim and Marmer's contacts in Florida.

The undisputed timeline in this case is fatal to establishing jurisdiction. The Complaint clearly alleges that Marmer failed to reimburse Argiros for the crew payments made in June 2024,

September 2024, October 2024, and February 2025. (ECF No. 1, Compl. ¶ 21). However, the Yacht first arrived in Florida eight months later, in October 2025. (ECF No. 9-1, Chornyy Decl. 27; ECF No. 13, Plf's Resp. at 9). The basic timeline evidences that the alleged debt (which is substantively disputed) purportedly arose well before the Vessel first arrived in Florida. It goes without saying that there is no relationship where the alleged nonpayment and the first activities within the forum state occur the better part of a year apart.

Argiros' remaining arguments attempting to explain the required "strong relationship" in this case are illogical and disjointed. (ECF No. 13, Plf's Resp. at 14–15). Argiros argues that the alleged failure to make the four crew payments somehow allowed the Vessel to continue to operate, supported the Vessel's marketing efforts, and preserved the Vessel's marketability.[4] *Id*. Argiros' assertions are rank speculation, at best, and are based solely on the fungibility of money.

### 2. <u>No Purposeful Availment</u>

For specific jurisdiction, established precedent is clear that the purposeful availment element still requires a legitimate connection to the claim at issue. The Supreme Court makes clear that the activities that constitute purposeful availment must be the same activities that meet the first element of "strong relationship" discussed in the previous section:

> In order for a court to exercise specific jurisdiction over a claim, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State. <u>**When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State**</u>.

*Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 264, 137 S. Ct. 1773, 1781 (2017) (internal quotation and citation omitted) (emphasis added); *see also Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U. S. 915, 919, 931 n.6 (2011) ("[E]ven regularly occurring sales

[4] Argiros' argument regarding "preserving the Vessel's marketability and facilitating its sale free and clear of such claims" is particularly ironic where Argiros has alleged a lien against the Vessel.

of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales."). Argiros admits that "even a single purposeful entry into a forum may support specific jurisdiction when *the claims arise from or related to those forum activities*." (ECF No. 13, Plf's Resp. at 10, emphasis added). Marmer could not agree more.

The problem for Argiros is that the activities it cites for purposeful availment are activities with third parties with no claims in this case. *See Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 265 ("[A] defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction.")). Even Marmer's solicitation efforts in Florida for the sale of the Vessel produced no actual contract and, in any event, no solicitations were directed at Argiros in Florida. *See Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A.*, 792 F.2d 989, 994 (11th Cir. 1986) ("A direct solicitation by a foreign defendant **of the business of a forum resident** has been held to be purposeful availment in cases where either a continuing relationship, or some in-forum performance on the part of the plaintiff, was contemplated.") (emphasis added). To allow activities that are wholly unrelated to Argiros' claim to meet the purposeful availment element would fly in the face of the core tenet of specific jurisdiction.

Lastly, Argiros' claim for nonpayment of an alleged debt did not accrue in Florida and there is no requirement for such debt to be paid in Florida. Even if this were the case, a defendant's promise to make payments in the forum state, standing alone, is insufficient and must be accompanied by some other ***related*** substantial act in Florida that is purposefully directed toward the state or its residents. *World Fuel Servs., Inc. v. First Serv. Bank*, No. 24-cv-22369-ALTMAN/Sanchez, 2024 U.S. Dist. LEXIS 139136, at *12 (S.D. Fla. Aug. 6, 2024) (citing *deMco Techs., Inc. v. C.S. Eng'd Castings, Inc.*, 769 So. 2d 1128, 1131 (Fla. 3d DCA 2000)); *see also Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 503 (Fla. 1989); *Argos Glob. Partner Servs.,*

*LLC v. Ciuchini*, 446 F. Supp. 3d 1073, 1088 (S.D. Fla. 2020). Argiros can point to no substantial act in Florida that is related to the alleged and disputed debt.

### 3. Offending Traditional Notions of Fair Play and Substantial Justice.

Specific jurisdiction against Marmer in Florida would offend traditional notions of fair play and substantial justice because it is not foreseeable whatsoever that the alleged claim of nonpayment to a Croatian company for reimbursement of crew from around the world would cause Marmer to be haled into a Florida court. Argiros' claim has absolutely no connection with Florida.

Vessel at issue has left U.S. waters. In fact, the majority of the Vessel's stay was in the Foreign Trade Zone ("FTZ"), which technically means that the Vessel was deemed to be outside of U.S. waters.[5] Even assuming, *arguendo*, that the Vessel was in Florida waters for a few months, the issue is now moot as the Vessel is no longer in Florida. This case is brought by a Croatian company against a Cayman Islands company, for an alleged debt incurred outside of Florida, regarding reimbursement for payments made to crew from around the world. There are no witnesses based in Florida, there are no Florida residents harmed or effected by claim at issue, and Florida has no relevant interest or stake in the outcome of this case. Argiros claims that the claim should be adjudicated in Florida because "relevant witnesses, brokers, marina personnel, service providers, and other evidence are located here." (ECF No. 13, Plf's Resp. at 17). This is simply not true and there is no Florida-based evidence. Florida brokers, marina personnel, and service providers have nothing to do with this case. To allow this case to proceed against Marmer in Florida would offend traditional notions of fair play and substantial justice.

---

[5] Argiros describes the FTZ as a legal tool that allows vessels to be shown and sea trialed without triggering immediate import duties. (ECF No. 13, Plf's Resp. at 16). The U.S. government necessarily agrees to not recognize the FTZ as constituting U.S. waters, such that import duties are not triggered (conditioned on compliance with all bond obligations). A helpful analogy is that of a foreign country's embassy within the United States.

## CONCLUSION

WHEREFORE, Defendant, Marmer Investments Limited, *in personam*, respectfully requests that this Court enter an Order as follows:

A. Dismissing the Complaint against Marmer for insufficient service of process;

B. Dismissing the Complaint, with prejudice, against Marmer for lack of personal jurisdiction; and

C. Granting such further relief as the Court deems appropriate.

Dated: June 24, 2026

Respectfully Submitted,

*/s/ Serena A. Witter*

Serena A. Witter, Esq.
Fla. Bar No. 45216
Michael Karcher
Florida Bar No. 516287
ROBERT ALLEN LAW
The Four Seasons Office Tower
1441 Brickell Avenue, Suite 1400
Miami, Florida 33131
Tel. (305) 372-3300
Fax. (305) 379-7019
Email: switter@robertallenlaw.com
mkarcher@robertallenlaw.com
litigation@robertallenlaw.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY on this 24th day of June, 2026, a true and correct copy of the foregoing served via the CM/ECF system on all counsel of record indicated below.

Michael T. Moore, Esq.
Caycie Flitman, Esq.
MOORE & COMPANY, P.A.
Tel. (786) 221-0600
Fax (786) 221-0601
Email michael@moore-and-co.com
cflitman@moore-and-co.com

*Counsel for Plaintiff*

*/s/ Serena Witter*
Serena A. Witter, Esq.