**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-cv-22409-ALTMAN**

**ARGIROS D.O.O.**,

*Plaintiff*,

*v.*

**MARMER INVESTMENTS LIMITED**, *in personam*,
and **M/Y KAISER**, *in rem*,

*Defendants*.
_______________________________________/

# ORDER

A Croatian yacht-management company sued a yacht and the yacht's owner—a Cayman Islands-based company. The latter now moves to dismiss the only claim against it, arguing—among other things—that the Plaintiff has failed to establish personal jurisdiction. After careful review, we **GRANT** the motion.

## THE FACTS

Marmer Investments Limited ("Marmer") is "a Cayman Islands entity that maintains its principal place of business outside the State of Florida." Complaint [ECF No. 1] ¶ 4. "M/Y KAISER" (the "Vessel") "is a 2011 196-foot Abeking & Rasmussen motor yacht bearing official number 742935, registered in the Cayman Islands[.]" *Id.* ¶ 5. Our Plaintiff—Argiros D.O.O., a Croatian limited liability company—claims that it "was employed as the Vessel's yacht management company," that it "engaged in . . . the administration and payment of crew wages and other operational expenses . . . for the Vessel," and that Marmer "owns" the Vessel. *Id.* ¶¶ 3, 6, 12. It alleges that, "pursuant to the parties' established course of dealing," it "paid the Vessel's crew wages for . . . June 2024," "September 2024," "October 2024," and "February 2025." *Id.* ¶¶ 19, 21; *see also id.* ¶ 18 ("All necessaries provided by

Plaintiff, including the payment of crew wages, were furnished on the order of Marmer, through its authorized agent being the Vessel's Captain."). Despite "knowingly accept[ing], us[ing], and benefit[ing]" from a "total amount" of "€424,633.63" in "crew wages," our Plaintiff asserts, Marmer and the Vessel "failed to reimburse [the] Plaintiff for the amounts due." *Id.* ¶¶ 1, 24.

In April 2026, the Plaintiff sued Marmer and the Vessel (collectively, the "Defendants") to "recover all sums due and owing[.]" *Id.* ¶ 2. The Complaint asserts three counts: two maritime liens against the Vessel itself (Counts I and II), *see id.* ¶¶ 27–52; and an unjust-enrichment claim against Marmer (Count III), *see id.* ¶¶ 53–61. In May 2026, Marmer—but not the Vessel—filed a Motion to Dismiss (the "MTD") [ECF No. 9]. The MTD is now ripe for adjudication. *See* Response in Opposition to the MTD (the "Response") [ECF No. 13]; Reply in Support of the MTD (the "Reply") [ECF No. 17].

## The Law

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Megladon, Inc. v. Vill. of Pinecrest*, 661 F. Supp. 3d 1214, 1221 (S.D. Fla. 2023) (Altman, J.) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "In deciding a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, but legal conclusions without adequate factual support are entitled to no assumption of truth." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (cleaned up).

## Analysis

Marmer advances two arguments for its request that we dismiss Count III. It first asserts that the Plaintiff's "attempted service on Marmer was improper because [the] Plaintiff served someone

present on the Yacht, not someone authorized to accept service of process." MTD at 5. It next argues that, in any event, we lack personal jurisdiction over Marmer. *See id.* at 6. We'll begin—and end—with personal jurisdiction. *See Republic of Pan. v. BCCI Hldgs. (Lux.) S.A.*, 119 F.3d 935, 940 (11th Cir. 1997) ("A defendant that is not subject to the jurisdiction of the court cannot be bound by its rulings."). And we'll then turn to the Plaintiff's request for leave to amend its Complaint.

## I. Personal Jurisdiction

"The Supreme Court has recognized two types of personal jurisdiction: general jurisdiction . . . and specific jurisdiction." *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1228 (11th Cir. 2023). "General jurisdiction lies in the forum where the defendant is domiciled or fairly regarded as at home." *Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 12 (2025) (cleaned up). "A court in such a forum may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Ibid.* (cleaned up). "Specific jurisdiction is different: It covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). "To exercise specific jurisdiction, the defendant must have 'purposefully availed' itself of the privilege of conducting activities—that is, purposefully establishing contacts—in the forum state and there must be a sufficient nexus between those contacts and the litigation." *Jekyll Island-State Park Auth. v. Polygroup Macau Ltd.*, 140 F.4th 1304, 1317 (11th Cir. 2025) (quotation marks omitted). "[A] federal court generally undertakes a two-step analysis to determine whether there is personal jurisdiction over a nonresident defendant." *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1272 (11th Cir. 2022). *First*, we "determine whether the plaintiff has alleged sufficient facts to subject the defendant to the forum state's long-arm statute." *Ibid. Second*, we "decide whether the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *Ibid.*

Our Plaintiff claims that we have "personal jurisdiction over . . . Marmer . . . pursuant to Florida Statutes § 48.193 and the Due Process Clause because Marmer, directly and/or through its agents, including the Vessel's Captain and managers, has operated, conducted, engaged in, or carried on a business or business venture in Florida, and has engaged in substantial and not isolated activity within Florida." Complaint ¶ 10. "In particular," it continues, "Marmer has operated and maintained the Vessel within the State of Florida for an extended period of time, marketed and offered the Vessel for sale in Florida," "offered the Vessel for charter to customers in Florida," and "directed and/or authorized the provision of necessaries to the Vessel, including operational, management, and crew-related services, while the Vessel was present in Florida." *Ibid.* In turn, Marmer contends that the "Complaint fails to allege sufficient business activities to establish specific jurisdiction pursuant to Florida's long-arm statute." MTD at 7 (cleaned up). We agree with Marmer.[1]

The Complaint never specifies the subsection of the Florida Long Arm Statute on which our Plaintiff relies, *see* Complaint ¶ 10 ("This Court has personal jurisdiction over . . . Marmer . . . pursuant to Florida Statutes § 48.193[.]"), but our Plaintiff seems to proceed under the *first* subsection, which confers personal jurisdiction over "any cause of action arising from . . . [o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." FLA. STAT. § 48.193(1)(a)(1). But "[i]n order to establish that a defendant is 'carrying on

[1] As a preliminary matter, we note that the Complaint itself never mounts a general-jurisdiction theory. *See* Complaint ¶ 10 ("This Court has personal jurisdiction over . . . Marmer . . . pursuant to Florida Statutes § 48.193 and the Due Process Clause[.]"). In any event, the Plaintiff doesn't appear to contest the general-jurisdiction challenge Marmer presents in its MTD. *See* MTD at 12 ("Plaintiff has failed to allege any type of activity th[at] warrants general jurisdiction in Florida."). Still, for the avoidance of any doubt, we'll confirm at the outset that the Plaintiff cannot proceed under such a theory. "The paradigm forums in which a corporate defendant is 'at home' . . . are the corporation's place of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (cleaned up). Marmer, however, is neither incorporated nor headquartered in Florida. *See* Complaint ¶ 4 ("Defendant Marmer Investments Limited, *in personam*, is a Cayman Islands entity that maintains its principal place of business outside the State of Florida and is the record owner of the Vessel.").

business' for the purposes of the long-arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). "[F]actors relevant to whether a plaintiff has shown a defendant's general course of business activity[ ] includ[e]: (1) the presence and operation of an office in Florida, (2) the possession and maintenance of a license to do business in Florida, (3) the number of Florida clients served, and (4) the percentage of overall revenue gleaned from Florida clients." *Melgarejo v. Pycsa Pan., S.A.*, 537 F. App'x 852, 860 (11th Cir. 2013) (quotation marks omitted).

Our Plaintiff fails to demonstrate that the Defendants "carry[ ] on a business or business venture in Florida" within the meaning of Subsection (1)(a)(1). The Complaint alleges that Marmer "operated, conducted, engaged in, or carried on a business or business venture in Florida, and . . . engaged in substantial and not isolated activity within Florida," because he "operated and maintained the Vessel within the State of Florida for an extended period of time," "marketed and offered the Vessel for sale in Florida," "offered the Vessel for charter to customers in Florida," and "directed and/or authorized the provision of necessaries to the Vessel, including operational, management, and crew-related services, while the Vessel was present in Florida." Complaint ¶ 10. But those allegations—as Marmer notes—"fail[ ] to meet the long-arm statute's direct connexity requirement," since the "alleged and disputed debt did not 'arise from' any activity occurring in Florida." Reply at 6. The Complaint itself makes clear that the crew payments at issue occurred on "June 2024," September 2024," "October 2024," and "February 2025." Complaint ¶ 21. According to the Plaintiff, however, the Vessel didn't enter Florida until "October 2025." Response at 9. We therefore fail to see how the cause of action here—*i.e.*, the alleged failure to reimburse for those crew

payments—bears a sufficient causal connection to Marmer's activities in Florida, given that those payments *preceded* the Vessel's arrival in Florida.[2]

Resisting that conclusion, the Plaintiff now insists that "the Vessel was brought to Florida for the purpose of listing and marketing the Vessel for sale." Response at 8. More specifically, it maintains that "the Vessel entered Florida in October 2025 for the purpose of listing the Vessel for sale"; "was displayed at both the Fort Lauderdale International Boat Show and the Palm Beach International Boat Show"; "received provisioning, maintenance, and dockage services while located in Florida"; and "remained in Florida from October 2025 through at least the Palm Beach International Boat Show held March 25–29, 2026." *Id.* at 9. The Plaintiff adds that Marmer "intentionally utilized Florida's yacht marketplace as the platform from which to market and sell its principal asset," "repeatedly adjusted the asking price while pursuing a sale," "retained yacht sales professionals to facilitate the transaction including Fraser Yachts, whose Fort Lauderdale office marketed and offered the Vessel for sale," "contracted with Florida vendors and marina facilities, and sought to consummate the sale of a yacht valued at more than $40 million." *Id.* at 12. On that basis, the Plaintiff concludes, Marmer engaged in "deliberate and purposeful activities directed toward Florida" because it "intentionally brought its principal asset into Florida, maintained the Vessel in Florida for at least six months, marketed the Vessel through major Florida boat shows, and procured services for the Vessel while it was located within the State." *Ibid.*

[2] Our Plaintiff never alleges that Marmer failed to make repayments *within* Florida. And it certainly never invokes a breach-of-contract theory of personal jurisdiction under Florida Stat. § 48.193(7). *See* FLA. STAT. § 48.193(1)(a)(7) (conferring personal jurisdiction when a party "[b]reach[es] a contract in this state by failing to perform acts required by the contract to be performed in this statute"). We thus decline to refashion the personal-jurisdiction theory it advanced in the Complaint into something more viable. *See Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it.").

As a preliminary matter, those additional allegations appear nowhere in the Complaint. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) ("[R]eview on a motion to dismiss is limited to the four corners of the complaint." (quotation marks omitted)); *see also Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) ("Ordinarily, we do not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss."). So, "[b]ecause [the Plaintiff] raised this argument for the first time in . . . response to [the] motion to dismiss, instead of seeking leave to file an amended complaint, pursuant to Fed. R. Civ. P. 15(a), it was not properly raised." *Huls v. Llabona*, 437 F. App'x 830, 832 n.5 (11th Cir. 2011).

In any event, those allegations run headlong into the same issue we discussed above: The alleged crew payments—by the Plaintiff's own account—*pre-date* the Vessel's arrival in Florida. The allegations introduced by the Response therefore *still* fail to establish "a direct affiliation, nexus, or substantial connection . . . between the basis for the cause of action and the business activity." *Doe (V.H.) v. Hyatt Hotels Corp.*, 2024 WL 3859882, at *1 (11th Cir. Aug. 19, 2024) (quotation marks omitted); *see also ibid.* ("Florida courts have interpreted the specific jurisdiction under Florida Statute § 48.193(1)(a)(1) to require 'connexity,' or 'a causal connection between the defendant's activities in Florida and the plaintiff's cause of action.'"). So, on the record before us, we find that the Plaintiff has failed to establish personal jurisdiction over Marmer.[3]

### II. Leave to Amend

The Eleventh Circuit has made clear that "filing a motion is the proper method to request leave to amend a complaint"—and that such a motion "should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment." *Cita Tr. Co. AG v. Fifth Third*

[3] Given our holding, we needn't reach Marmer's due-process or deficient-service arguments. See *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999) ("A court without personal jurisdiction is powerless to take further action.").

*Bank*, 879 F.3d 1151, 1157 (11th Cir. 2018) (cleaned up). Instead of moving for leave to amend, however, our Plaintiff added a cursory request for leave to amend to the end of its Response—and it did so without *any* argument as to how an amended complaint might overcome the deficiencies Marmer has identified. *See* Response at 26 ("[S]hould the Court disagree with any aspect of Plaintiff's jurisdictional or service arguments, Plaintiff respectfully requests leave to amend prior to any dismissal of its maritime claims. Because any deficiency would be curable, dismissal with prejudice would be inappropriate."). "A request for a court order must be made by motion" that "state[s] with particularity the grounds for seeking the order." FED. R. CIV. P. 7(b)(1). And, "where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." *Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1277 (11th Cir. 2018) (cleaned up); *see also Pop v. LuliFama.com LLC*, 145 F.4th 1285, 1298 (11th Cir. 2025) ("The only place that [Plaintiff] requested leave to amend was on the last page of his response in opposition to the defendants' motions to dismiss," so "it had no legal effect." (cleaned up)).

Our Plaintiff disregarded those requirements. Still, we "should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). So, we grant our Plaintiff leave to amend its Complaint to plead additional facts that might avoid the defects we've highlighted here.[4]

[4] A final note. Our Multiple Defendants Order [ECF No. 4] explains that "[a]ll Defendants must *jointly* file any *motions* (*e.g.*, motions to dismiss or for summary judgment) and any *responses in opposition* to motions filed by the Plaintiff." *Id.* at 2. It further warns that "[t]he Court will sanction noncompliance with this order[.]" *Ibid.* But only Marmer—not the Vessel—filed the MTD, and Marmer's personal-jurisdiction challenge makes no mention of our *in-rem* jurisdiction over the Vessel. *See Crimson Yachts v. Betty Lyn II Motor Yacht*, 603 F.3d 864, 868 (11th Cir. 2010) ("Federal district courts obtain *in rem* jurisdiction over a vessel when a maritime lien attaches to it." (citation omitted)). The Plaintiff's claims against the Vessel—Counts I and II—thus survive this Order.

## CONCLUSION

After careful review, therefore, we **ORDER and ADJUDGE** that the Motion to Dismiss [ECF No. 9] is **GRANTED** as follows:

(1) Count I is **DISMISSED without prejudice**.

(2) All deadlines and hearings involving the Defendant Marmer Investments Limited are hereby **TERMINATED**.

(3) Our Plaintiff may file an amended complaint within **fourteen days** of this order.

**DONE AND ORDERED** in the Southern District of Florida on October 16, 2026.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**